AMIN TALATI WASSERMAN, LLP
William P. Cole, Bar No. 186772
Matthew R. Orr, Bar No. 211097
Richard L. Hyde, Bar No. 286023
515 South Flower St., 18th Floor
Los Angeles, CA  90071
Tel:   (213) 933-2330
Fax:   (312) 884-7352
william@amintalati.com
matt@amintalati.com
richard@amintalati.com

Attorneys for Defendant Ferrara Candy
Company Holdings, Inc.

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEANA LOZANO, individually and on behalf of all those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FERRARA CANDY COMPANY HOLDINGS, INC.,<br><br>Defendant. | Case No.:  2:23-cv-04670-RGK-JPR<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Date:  September 18, 2023<br>Time: 9:00 a.m.<br>Place: Courtroom 850 |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................................1

II.     BACKGROUND ....................................................................................................2

        A.      FDA Regulations Regarding Flavoring Disclosures ...................................2

        B.      Plaintiff's Allegations. ................................................................................2

III.    LEGAL STANDARD ............................................................................................5

IV.     ARGUMENT..........................................................................................................5

        A.      Plaintiff Fails to Plausibly Allege that the Malic Acid Contained in the
                Product is an "Artificial Flavor."...............................................................5

                1.      The Complaint does not plausibly allege the malic acid is artificial. 6

                2.      The Complaint does not plausibly allege the malic acid acts as a
                        "flavor."................................................................................................8

        B.      Plaintiff Fails to Plausibly Allege the Product Label Would Mislead
                Reasonable Consumers .............................................................................10

        C.      Plaintiff States No Equitable Claims Because She Fails to Plead Facts
                Establishing Her Legal Remedies Are Inadequate....................................12

        D.      Plaintiff's UCL "Unlawful" Claim is Impliedly Preempted to the Extent
                Based on Alleged Violations of FDA Regulations Incorporated by
                California's Sherman Law.........................................................................13

        E.      Plaintiff Lacks Standing to Pursue Injunctive Relief ...............................15

V.      CONCLUSION....................................................................................................18

TABLE OF CONTENTS

# **TABLE OF AUTHORITIES**

**State Cases**

*Kasky v. Nike, Inc.*, 27 Cal.4th 939 (2002) .................................................... 13

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134 (2003) ......................... 12

**Federal Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)................................................. 5, 10, 11

*Barrett v. Optimum Nutrition*, No. CV 21-4398-DMG, 2022 WL 3452791
(C.D. Cal. July 18, 2022)...................................................... 12

*Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225 (9th Cir. 2019)........................ 10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................... 5

*Borchenko v. L'Oreal USA, Inc.*, 389 F.Supp.3d 769 (C.D. Cal. 2019) ..................... 14

*Brown v. Natures Path Foods, Inc.*, No. 21-cv-05132-HSG, 2022 WL 717816
(N.D. Cal. Mar. 10, 2022)..................................................... 16

*Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001) ..................... 14

*Chong v. Kind LLC*, 585 F.Supp.3d 1215 (N.D. Cal. 2022) ....................... 13

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983)........................... 15

*Clapper v. Amnesty Int'l USA*, 568 U.S. 3989 (2013).................................. 15

*Cota v. Ralph Lauren Corp.,* 603 F. Supp. 3d 666 (E.D. Wis. 2022)............................ 7

*Dailey v. A&W Concentrate Company*, 519 F. Supp. 3d 668
(N.D. Cal. Feb. 16, 2021) ................................................... 16

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006) ................................ 15

*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018).......................... 15

*Effinger v. Ancient Organics LLC*, No. 22-cv-03596-RS, 2023 WL 2214168
(N.D. Cal. Feb. 24, 2023)................................................... 15

*Figy v. Frito-Lay N. Am., Inc*., 67 F. Supp. 3d 1075 (N.D. Cal. 2014).......................... 6

*Girard v. Toyota Motor Sales, U.S.A., Inc.*, 316 F. App'x 561 (9th Cir. 2008)............ 10

*Gouwens v. Target Corp.*, No. 22-50016, 2022 WL 18027524
(N.D. Ill. Dec. 30, 2022).................................................... 11

*Gross v. Vilore Foods Company, Inc.*, No. 20cv0894 DMS (JLB), 2020 WL 6319131
   (S.D. Cal. Oct. 28, 2020) ........................................................................16

*Guaranty Trust Co. of New York v. York*, 326 U.S. 99 (1945) ......................................12

*Hawkins v. Coca-Cola Co.*, --- F. Supp. 3d ----, 2023 WL 1821944 (S.D.N.Y. 2023)....7

*Hoffman v. Kraft Heinz Foods Co.*, No. 22-397, 2023 WL 1824795
   (S.D.N.Y. Feb. 7, 2023) ........................................................................12

*Hu v. Herr Foods, Inc.,* 251 F. Supp. 3d 813 (E.D. Pa. 2017) ......................................9

*In re Coca-Cola Prods. Mktg. & Sales Pracs. Litig. (No. II)*, No. 20-15742, 2021 WL
   3878654 (9th Cir. Aug. 31, 2021) ....................................................... 16, 17

*Ivie v. Kraft Foods Global, Inc.,* 961 F. Supp. 2d 1033 (N.D. Cal. 2013) ......................9

*Jackson v. General Mills, Inc.*, No. 18cv2634-LAB (BGS), 2020 WL 5106652
   (S.D. Cal. Aug. 28, 2020) ......................................................................15

*Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754 (W.D. Mo. 2015) .................11

*Lam v. General Mills, Inc.*, 859 F.Supp.2d 1097 (N.D. Cal. 2012)................................6

*Lozano v. Kellogg Co.*, No. 23-cv-3481 (C.D. Cal.) ......................................................1

*Lozano v. Pruvit Ventures, Inc.*, No. 23-cv-4394 (C.D. Cal.) ........................................1

*Lozano v. Walmart Inc.*, No. 23-cv-4500 (C.D. Cal.) ....................................................1

*Myers v. Wakefern Food Corp.*, No. 20-8470, 2022 WL 603000
   (S.D.N.Y. Mar. 1, 2022) ......................................................................7, 8

*Nacarino v. KSF Acquisition Corp.*, --- F.Supp.3d ---, No. 22-cv-04021-MMC, 2022 WL
   17178688 (N.D. Cal. Nov. 23, 2022) ....................................................13

*Nexus Pharmaceuticals, Inc. v. Central Admixture Pharmacy Services, Inc.*, 48 F.4th
   1040 (9th Cir. 2022) .................................................................. 13, 14, 15

*Perez v. Nidek Co., Ltd.*, 711 F.3d 1109 (9th Cir. 2013) .............................................14

*Potts v. Ford Motor Co.*, No. 3:21-cv-00256-BEN-BGS, 2021 WL 3112471
   (S.D. Cal. July 22, 2021) ................................................................ 12, 13

*Robie v. Trader Joe's Co.*, No. 20-7355, 2021 WL 2548960
   (N.D. Cal. June 14, 2021) ......................................................................6

TABLE OF AUTHORITIES

*Santiful v. Wegmans Food Mkts., Inc.*, No. 20-2933, 2022 WL 268955

   (S.D.N.Y. Jan. 28, 2022)........................................................................7

*Sims v. Campbell Soup Co.,* 2018 U.S. Dist. LEXIS 222535 (C.D. Cal. 2018)............. 16

*Sonner v. Premier Nutrition Corp.,* 971 F.3d 834 (9th Cir. 2020) ............................... 12

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ................................................... 17

*Tarzian v. Kraft Heinz Foods Co.*, No. 18-7148, 2019 WL 5064732

   (N.D. Ill. Oct 9, 2019)...........................................................................6

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) ..................................................... 17

*Turnipseed v. Simply Orange Juice Co.*, No. 20-8677, 2022 WL 657413

   (S.D.N.Y. Mar. 4, 2022).........................................................................7

*Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877 (C.D. Cal. 2013) ............ 5, 6, 8

*Weiss v. Trader Joe's Co.*, 838 F. App'x 302 (9th Cir. 2021)........................................ 10

*Willard v. Tropicana Manufacturing Co.*, 577 F. Supp. 3d 814 (N.D. Ill. 2021) .... 11, 16

*Zaback v. Kellogg Sales Co.*, No. 20-cv-0268, 2020 WL 3414656

   (S.D. Cal. June 22, 2020)........................................................................6

**Statutes**

21 C.F.R. § 101 .................................................................................... 2, 8, 9

21 C.F.R. § 170 .................................................................................... 8, 9, 10

21 C.F.R. § 184 .................................................................................... 6, 9

21 U.S.C. Sec. 343 ...................................................................................... 14

Cal. Bus. & Prof. § 17200 ..............................................................................5

Cal. Bus. & Prof. Code § 17500 ......................................................................5

Cal. Civ. Code § 1750 ...................................................................................5

Cal. Health & Safety Code § 109875 ............................................................. 13

Cal. Health & Safety Code § 110665 ............................................................. 14

F.R.C.P. Rule 8 ...........................................................................................5

F.R.C.P. Rule 12 .................................................................................... 5, 11

TABLE OF AUTHORITIES

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

In the last few months, Plaintiff Deana Lozano has filed a host of putative class action lawsuits in this District challenging the labeling of food or beverage products that contain malic acid.[1] In this case, she challenges the labeling of Ferrara Candy Company Holdings, Inc.'s ("Ferrara") Black Forest Juicy Burst Berry Medley Fruit Flavored Snacks (the "Product"). The Product's label states "Naturally Flavored," but Plaintiff alleges the Product contains an artificial version of malic acid, which she claims is used as an artificial flavoring. The Complaint, however, fails to plead factual content plausibly establishing (a) that the malic acid is artificial or (b) that it is used as a "flavoring." Therefore, all her claims fail as a matter of law.

Beyond these defects, Plaintiff also fails to plead facts plausibly establishing reasonable consumers would be misled. Plaintiff does not and cannot dispute that the Product contains natural flavoring. The labels do *not* state "All Natural" or "100% Natural" or that there are no artificial ingredients. She fails to plead facts plausibly establishing that reasonable consumers would expect the Product to be free of any artificial ingredients.

Plaintiff's claims also fail for additional reasons:

- Plaintiff does not state any claims for equitable relief because the Complaint does not allege facts establishing her legal remedies are inadequate.
- Plaintiff's "unlawful" claim under California's Unfair Competition Law is impliedly preempted to the extent based on the theory that Ferrara violated FDA regulations adopted by California's Sherman Law.
- Plaintiff does not allege facts plausibly establishing standing to pursue injunctive relief.

Accordingly, the Court should grant Ferrara's Motion to Dismiss.

---

[1] *See, e.g., Lozano v. Walmart Inc.*, No. 23-cv-4500 (C.D. Cal.); *Lozano v. Pruvit Ventures, Inc.*, No. 23-cv-4394 (C.D. Cal.); *Lozano v. Kellogg Co.*, No. 23-cv-3481 (C.D. Cal.).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S COMPLAINT

1    **II.     BACKGROUND**

2          **A.     FDA Regulations Regarding Flavoring Disclosures.**

3          The FDA has issued a regulation, 21 C.F.R. § 101.22(i), that applies if a food label

4    makes a representation with respect to the "primary recognizable flavor(s)." The primary

5    recognizable flavor is deemed the "characterizing flavor" (e.g., strawberry). *Id.* § 101.22(i).

6    If the food contains no artificial flavor "which simulates, resembles or reinforces the

7    characterizing flavor," the name of the food on the principal display panel shall be

8    accompanied by the common or usual name of the characterizing flavor" (e.g., strawberry).

9    *Id.* § 101.22(i)(1). However, if none of the natural flavor used in the food is derived from

10   the product whose flavor is simulated, the food in which the flavor is used shall be labeled

11   either with the flavor of the product from which the flavor is derived or as "artificially

12   flavored." *Id.* Also, if the food "contains any artificial flavor which simulates, resembles

13   or reinforces the characterizing flavor," the regulation states the product shall be labeled as

14   "artificially flavored." *Id.* § 101.22(i)(2).

15         These requirements apply only to "flavoring agents and adjuvants," which are

16   "[s]ubstances added to impart a taste or aroma in food." *Id.* § 170.3(o)(12). They do not

17   apply to "[f]lavor enhancers," which are substances added "to supplement, enhance, or

18   modify the original taste and/or aroma of a food, without imparting a characteristic taste or

19   aroma of its own." *Id.* § 170.3(o)(11). Put simply, "flavor enhancers are not flavorings"

20   and do *not* need to be disclosed on the front label. FDA, *Food Labeling: Declaration of*

21   *Ingredients*, 56 Fed. Reg. 28592, 28598 (June 21, 1991) ("FDA's regulations describing

22   the various functional effects of human food ingredients differentiate between 'flavoring

23   agents and adjuvants' and 'flavor enhancers'"). Flavor enhancers need merely "be declared

24   in the ingredient list by their common or usual names." *Id.*

25         **B.     Plaintiff's Allegations.**

26         Ferrara manufactures the Product. (Complaint, Dkt. 1, ¶ 20.) As stated on the labels,

27   the Product is made with real fruit juice, including strawberry juice, raspberry juice, and

28   blackberry juice. (*Id.* ¶¶ 21, 23.)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16  (*Id.* ¶ 21.)

17
18
19
20
21
22
23
24
25
26
27
28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16   (*Id.* ¶ 23.) The Complaint does not allege the ingredient list is inaccurate in any way.

17   As disclosed in the ingredient list, in addition to containing real fruit juices, the

18   Product also contains malic acid. (*Id.*) Plaintiff admits malic acid is naturally occurring,

19   but she claims the malic used in the Product is a synthetic version known as "DL malic

20   acid." (*Id.* ¶¶ 24, 25.) According to Plaintiff, the malic acid changes the "ratio" between

21   sugars and acid, thereby adjusting the "sweetness" or "tartness" of a fruit flavor. (*Id.* ¶ 27.)

22   She makes the conclusory assertion that the malic acid "create[s], simulate[s], and/or

23   reinforce[s] the sweet and tart taste that consumers associate with the fruit flavors stated

24   on the labels." (*Id.* ¶ 29.) Completely ignoring the difference between flavors, on the one

25   hand, and "flavor enhancers" or "pH balancers," on the other hand, she then alleges that

26   Ferrara misbranded the Product as "naturally flavored" and was required to "display both

27   front- and back-label disclosures to inform consumers that the Products are artificially

28   flavored." (*Id.* ¶¶ 30, 43.)

Based on these allegations, Plaintiff asserts the following claims on behalf of a putative California class: violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. § 17200 et seq.; violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 et seq.; violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 et seq.; unjust enrichment; and breach of express warranty.

## III.   LEGAL STANDARD

The court must dismiss a claim if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 8, 12(b)(6). Rule 8 demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The complaint must state sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility only if the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Allegations that are merely consistent with liability do not suffice. *Id.*

The court does not accept as true "legal conclusions," "labels and conclusions" or a "formulaic recitation of the elements of a cause of action[.]" *Iqbal*, 556 U.S. at 678. A "naked assertion" devoid of "further factual enhancement" does not suffice. *Iqbal*, 556 U.S. at 678 (citation omitted).

## IV.   ARGUMENT

### A.   Plaintiff Fails to Plausibly Allege that the Malic Acid Contained in the Product is an "Artificial Flavor."

All of Plaintiff's claims depend on the same theory—i.e., that the Product allegedly contains *artificial* malic acid used as a *flavoring*. Therefore, to meet the plausibility requirement for each of her claims, Plaintiff's factual allegations must establish *both* that the malic acid is artificial and that it acts as a "flavor" (not a flavor enhancer, pH balancer, or any other non-"flavor" purpose). *See Viggiano v. Hansen Natural Corp.*, 944 F. Supp.

- 5 -

2d 877, 889 (C.D. Cal. 2013) (distinguishing "between unnatural *ingredients* and unnatural *flavors*, finding that FDA regulations permit a food product to be labeled as containing 'natural flavors' even if the ingredients themselves are not all natural"); *cf. Lam v. General Mills, Inc.*, 859 F.Supp.2d 1097, 1103 (N.D. Cal. 2012). The Complaint fails to allege facts plausibly establishing either.

> **1.     The Complaint does not plausibly allege the malic acid is artificial.**

Although Plaintiff repeatedly characterizes the malic acid in the Product as "artificial," "conclusory allegations that the flavoring is artificial are insufficient to state a claim." *Robie v. Trader Joe's Co.*, No. 20-7355, 2021 WL 2548960, at *5 (N.D. Cal. June 14, 2021); *see also, e.g., Figy v. Frito-Lay N. Am., Inc*., 67 F. Supp. 3d 1075, 1090 (N.D. Cal. 2014). Plaintiff's factual allegations do not establish that the malic acid in the Product is "artificial."

Malic acid "occurs naturally in various foods." (21 C.F.R. § 184.1069(a); *see also* Dkt. 1, ¶ 24 ("there is a naturally occurring form of malic acid").) Plaintiff cannot state a plausible claim unless she pleads factual content (not conclusions) establishing that Ferrara uses artificial malic acid in the Product. Attempting to satisfy this burden, Plaintiff alleges that naturally occurring malic acid "is extremely expensive to formulate in large quantities and is almost never used in mass-produced food products." (Dkt. 1, ¶ 24.) But another court already rejected this same allegation in another case premised on the presence of allegedly "artificial" ingredients. *See Tarzian v. Kraft Heinz Foods Co.*, No. 18-7148, 2019 WL 5064732 (N.D. Ill. Oct 9, 2019). There, the plaintiffs alleged that Kraft mislabeled beverages as having "no artificial preservatives" because they contained allegedly "artificial" citric acid. *Id.* at *1. The plaintiffs conceded that citric acid could be naturally "produced by extraction from fresh fruits," but speculated that Kraft used the "artificial" version because it was more "economically viable" to do so. *Id.* The court dismissed the complaint, finding that the plaintiffs had failed "to draw a connection between the common industry practice and the actual practice used by Kraft." *Id.* at *4; *see also Zaback v. Kellogg Sales Co.*, No. 20-cv-0268, 2020 WL 3414656, at *3 (S.D. Cal. June 22, 2020)

- 6 -

(finding insufficient the plaintiff's conjecture about the cost of vanilla and Kellogg's economic incentives to use less expensive "natural flavor"). Here, too, Plaintiff's speculation about Ferrara's economic incentives or common industry practice does not amount to a plausible allegation that the malic acid is "artificial."

Plaintiff also alleges that "an independent third-party laboratory" detected synthetic DL malic acid in the Product. (Dkt. 1, ¶ 25.) But these bare-bones allegations are insufficient to push her claims "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 683 (citation omitted). Several courts have dismissed similar consumer fraud claims when the plaintiffs failed to provide sufficient details about the laboratory testing. *See, e.g., Hawkins v. Coca-Cola Co.*, --- F. Supp. 3d ----, 2023 WL 1821944 (S.D.N.Y. 2023), at *7; *Myers v. Wakefern Food Corp.*, No. 20-8470, 2022 WL 603000, at *4 (S.D.N.Y. Mar. 1, 2022). [2]

*Hawkins* is instructive. There, the plaintiff alleged that Coca-Cola mislabeled its Pina Colada Fanta soda with the phrase "100% Natural Flavors" even though it was allegedly artificially flavored with malic acid." *Id.* at *1–2, 6. The court dismissed the complaint, finding the "bare, unsubstantiated allegations about the *possibility* that the Product contains artificial DL-Malic acid, without any additional factual support from product testing," were not sufficient to establish that the soda contained "artificial" malic acid. *Id.* at *7. The court noted the plaintiff's allegation that "amorphous 'laboratory analysis' concluded that the Product contained artificial malic acid instead of its natural form." *Id.* But absent details about this alleged testing, the court found the plaintiff's references to laboratory testing were a "far cry from raising any factually substantiated

---

[2] *See also, e.g., Santiful v. Wegmans Food Mkts., Inc.*, No. 20-2933, 2022 WL 268955, at *4 (S.D.N.Y. Jan. 28, 2022) (dismissing claims regarding flavor representations, rejecting allegations of laboratory analysis that "contain[ed] no information as to the testing methodology, the date, time, or place of the testing, who conducted the testing, and what the exact product tested was"); *Turnipseed v. Simply Orange Juice Co.*, No. 20-8677, 2022 WL 657413, at *4 (S.D.N.Y. Mar. 4, 2022) (similar); *cf. Cota v. Ralph Lauren Corp.*, 603 F. Supp. 3d 666, 672 (E.D. Wis. 2022) (dismissing lawsuit challenging thread-count representations and rejecting the plaintiff's reliance on "unspecified laboratory analysis").

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S COMPLAINT

allegations that the Product contains artificial malic acid, rather than natural malic acid." *Id.* (internal quotation marks omitted).

Here also, Plaintiff's Complaint does not "describe the testing methodology followed, the specific date, time, or place of the testing, who conducted the testing, [or] the qualifications of the testers." *Myers*, 2022 WL 603000, at *4. Her conclusory allegation of laboratory testing is not sufficient to plausibly establish that the malic acid in the Product is "artificial." Thus, all her claims fail as a matter of law.

## 2. The Complaint does not plausibly allege the malic acid acts as a "flavor."

Even had Plaintiff plausibly alleged the malic acid is artificial, her claims would still fail because she has not plausibly alleged the malic acid acts as a "flavor." To establish that the malic acid acts as an artificial "flavor," she must allege factual content plausibly establishing that it "simulates, resembles or reinforces the *characterizing flavor*" of the product. 21 C.F.R. § 101.22(i)(1) (emphasis added); *see also id.* § 101.22(i) (the "primary recognizable flavor" of the product, as depicted through words or vignettes on the labeling, is its "characterizing flavor"). It is not enough that malic acid may affect the taste of the Product or "amplify whatever characterizing flavor it has from another source." *Viggiano*, 944 F. Supp. 2d at 889.

Far from establishing that the Product uses malic acid as a flavoring agent, Plaintiff's allegations suggest that Ferrara uses malic acid as a "[f]lavor enhancer"—*i.e.*, a "substance[] added to supplement, enhance, or modify the original taste and/or aroma of a food, without imparting a characteristic taste or aroma of its own." 21 C.F.R. § 170.3(o)(11). That is fatal because the FDA has made clear that "flavor enhancers" are distinct from "flavors" and need not be disclosed as flavors on a product's labeling. Plaintiff alleges that the "DL malic acid" is used in the Product "to create a sweet and tart flavor." (Dkt. 1, ¶¶ 29 - 30.) But that lacks plausibility (and, in fact, cannot be true), as "sweet" and "tart" are not the "primary recognizable flavor" of the Product—which is labeled as a "berry medley" comprised of fruit snacks with characterizing fruit flavors such

as "strawberry," "blackberry," and "raspberry." (*See id.* ¶ 21.) Thus, malic acid is not the "characterizing flavor" of any of the flavored fruit snacks that make up the Product, which means it cannot constitute an "artificial flavor" under the FDA's flavor regulations. 21 C.F.R. § 101.22(i).

Even assuming the malic acid increases the sweetness or tartness of the Product (as Plaintiff alleges), that establishes merely that it "enhance[s]" and/or "modif[ies]" the characteristic fruit flavors of the fruit snacks—the prototypical example of a "[f]lavor enhancer." 21 C.F.R. § 170.3(o)(11). The FDA has explicitly recognized malic acid's use for this purpose. *See* 21 C.F.R. § 184.1069(c).[3] The FDA also has made clear that flavor enhancers are not subject to the FDA's regulations governing the disclosure of natural and artificial flavors. *See* 56 Fed. Reg. at 28598.

In *Ivie v. Kraft Foods Global, Inc.*, the plaintiff alleged Crystal Light claimed to contain "natural flavors," even though it contained potassium citrate and sodium citrate, which the plaintiff alleged were "artificial flavors." 961 F. Supp. 2d 1033, 1041 (N.D. Cal. 2013). The court dismissed: "While these substances may be artificial *ingredients*," the plaintiffs' allegations did not establish that "these ingredients are *flavors*, artificial or otherwise." *Id.* The court held that a "bare, conclusory assertion that these two ingredients 'simulate[], resemble[], or reinforce[] the characterizing . . . flavor . . . is insufficient to state a claim that these labels violate 21 C.F.R. § 101.22(i)(2)." *Id.* at 1042.

In *Hu v. Herr Foods, Inc.*, the plaintiff alleged the statement "No Preservatives Added" was false because the products contained citric acid, which the plaintiff characterized as a preservative. 251 F. Supp. 3d 813, 816–17 (E.D. Pa. 2017). The court dismissed, finding the plaintiff had not plausibly alleged the citric acid actually acted as a preservative in the product. *See id.* at 821–22. The plaintiff asked the court to "draw a chain of inferences that . . . warrant the conclusion that Defendant decided to use citric acid in an

---

[3] The FDA has also recognized that malic acid can be used as a "pH control agent." 21 C.F.R. § 184.1069(c); *see also id.* § 170.3(o)(23) (defining a "pH control agent[]" as a "[s]ubstance[] added to change or maintain active acidity or basicity"). And that use is entirely consistent with Plaintiff's allegation that malic acid lends a "sweet and tart taste" to the Product. (Dkt. 1, ¶ 29.)

attempt to preserve its Products," but the court found that these "arguments and speculations are not supported by well-pleaded factual allegations" and that it "need not accept" the plaintiff's allegations "as true." *Id.* at 822–23.

Likewise, Plaintiff has not plausibly alleged factual content (rather than conclusions) establishing the malic acid in the Product acts as a *flavor*, rather than as a flavor enhancer or a pH balancer. Even if her allegations established that malic acid *could* act as a "flavor" (they do not), the "mere possibility" that malic acid may function as a flavor does not state a plausible claim that the Product contains "artificial flavors." *Iqbal*, 556 U.S. at 679. Because there are no plausible allegations establishing the malic acid in the Product provides a "characteristic taste or aroma of its own" and does not merely "enhance" or "modify" other fruit flavors, 21 C.F.R. § 170.3(o)(11), this Court should dismiss the Complaint.

**B.    Plaintiff Fails to Plausibly Allege the Product Label Would Mislead Reasonable Consumers.**

Even assuming *arguendo* the malic acid in the Product acts as an "artificial flavor," the Complaint still fails because Plaintiff has not plausibly alleged the omission of an "artificial flavor" disclosure is likely to mislead reasonable consumers.

The Ninth Circuit has made clear that "claims under the California consumer-protection statutes"—such as UCL, FAL, and CLRA claims—are governed by the "reasonable consumer" test, which requires Plaintiff to establish that reasonable consumers are likely to be deceived. *Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019). Moreover, absent a plausible claim of deception, claims for breach of express warranty and unjust enrichment also fail. *See Weiss v. Trader Joe's Co.*, 838 F. App'x 302, 303 (9th Cir. 2021) (affirming dismissal of warranty claims premised on the "exact same representations as her consumer protection claim"); *Girard v. Toyota Motor Sales, U.S.A., Inc.*, 316 F. App'x 561, 563 (9th Cir. 2008) (an "unjust enrichment claim also fails" when a defendant's "non-deceptive advertising" does not entitle the plaintiff to restitutionary relief). Because Plaintiff has not plausibly alleged that Ferrara's labeling is likely to

mislead reasonable consumers, all her claims fail.

The Product's labeling does not state that the fruit snacks are "all natural," "100% natural," or otherwise free of artificial ingredients. To the contrary, the Product consists of processed, shelf-stable, gummy fruit snacks with strawberry, blackberry, and raspberry flavors. (*See* Dkt. 1, ¶ 21.) Common sense—which this Court applies on a Rule 12(b)(6) motion (*see Iqbal*, 556 U.S. at 679)—dictates that reasonable consumers would not assume a mass-marketed snack food was entirely free of artificial ingredients, or even artificial flavors, where the label never states "no artificial ingredients" or "no artificial flavors." *Cf. Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754, 759–60 (W.D. Mo. 2015) (dismissing claims that potato chips were mislabeled as "natural" because they contained allegedly "artificial" ingredients, holding the plaintiff's understanding of the labeling was implausible as applied to potato chips "manufactured in mass"). Absent any express representation that the Product is free of artificial flavors, the alleged omission of an "artificially flavored" disclosure does not render the labeling deceptive.

In *Gouwens v. Target Corp.*, No. 22-50016, 2022 WL 18027524 (N.D. Ill. Dec. 30, 2022), the plaintiff alleged Target misled consumers by failing to describe its fruit punch-flavored liquid water enhancer as "artificially flavored," even though it contained allegedly "artificial" malic acid. *Id.* at *1. The court dismissed, finding the plaintiff "fail[ed] to plausibly allege that this omission would mislead a significant portion of the targeted consumers to be deceived or misled." *Id.* at *3. "A reasonable consumer would not believe that a shelf-stable, bright red fruit punch flavored liquid water enhancer was free of artificial ingredients absent an affirmative statement to the contrary." *Id.*; *see also Willard v. Tropicana Manufacturing Co.*, 577 F. Supp. 3d 814, 833-34 (N.D. Ill. 2021) (finding the plaintiffs' allegation "that each Product contains malic acid and fails to disclose that fact on the front labels" was insufficient to establish "a reasonable consumer would be deceived by the labels").

Here, Ferrara does not represent that the Product contains fruit flavored snacks that are "all natural" or completely free of artificial ingredients. And there is no question the

Product *does* contain natural flavoring, including from real strawberry juice, raspberry juice, and blackberry juice. (Dkt. 1, ¶ 23.) A reasonable consumer would understand that shelf-stable, gummy fruit snacks sold in "berry medley" flavors would also likely contain ingredients that are not "natural." Plaintiff's allegation that the Product contains malic acid but fails to disclose that the fruit snacks are "artificially flavored" does not amount to a plausible claim of consumer deception. *See Hoffman v. Kraft Heinz Foods Co.*, No. 22-397, 2023 WL 1824795, at *7 (S.D.N.Y. Feb. 7, 2023) (because Kraft did not "state that the Product is *only* filled with natural flavors," and because the plaintiff "appear[ed] to concede that there are likely *some* natural flavors within the product," it was "hard . . . to see how a reasonable consumer would be misled merely because there may also be non-natural flavors") (emphasis in original).

## C.   Plaintiff States No Equitable Claims Because She Fails to Plead Facts Establishing Her Legal Remedies Are Inadequate.

In Counts 1 through 4, Plaintiff asserts UCL and FAL claims, which are equitable claims. *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1144, 63 P.3d 937 (2003); *Potts v. Ford Motor Co.*, No. 3:21-cv-00256, 2021 WL 3112471, at *5 (S.D. Cal. July 22, 2021). In Count 5, Plaintiff seeks equitable relief under the CLRA. In Count 6, she alleges unjust enrichment, another equitable claim.

Before Plaintiff can pursue equitable relief, she must plead facts establishing her legal remedies are inadequate. *Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 105-06 (1945); *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974); *Sonner v. Premier Nutrition Corp.,* 971 F.3d 834, 842-44 (9th Cir. 2020). In *Sonner*, the court affirmed dismissal of the plaintiff's restitution claims, holding the plaintiff had failed to show how an award of damages under the CLRA would be inadequate compared to restitution. 971 F.3d at 844; *accord Barrett v. Optimum Nutrition*, No. CV 21-4398-DMG, 2022 WL 3452791, *1-2 (C.D. Cal. July 18, 2022); *Bettles v. Toyota Motor Corp.*, No. 2:21-cv-07560-ODW, 2022 WL 1619337, *3 (C.D. Cal. May 23, 2022).

The same applies here. Plaintiff seeks to recover damages under her express

warranty and CLRA claims. (Dkt. 1, ¶ 112 and p. 21.) Her damages claims are based on the same alleged conduct as her equitable claims. The Complaint makes "no attempt to explain how money damages would be inadequate or unavailable here." *Potts*, 2021 WL 3112471, at \*5; *see also Nacarino v. KSF Acquisition Corp.*, --- F.Supp.3d --- No. 22-cv-04021-MMC, 2022 WL 17178688, at \*5 (N.D. Cal. Nov. 23, 2022). Thus, Plaintiff's UCL, FAL, and unjust enrichment claims fail entirely, as does her claim for equitable relief under the CLRA.

### D. Plaintiff's UCL "Unlawful" Claim is Impliedly Preempted to the Extent Based on Alleged Violations of FDA Regulations Incorporated by California's Sherman Law.

The UCL's "unlawful" prong "permits violations of other laws to be treated as unfair competition that is independently actionable." *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 949 (2002). In Count 2, Plaintiff asserts a UCL "unlawful" claim but does not specifically identify what other laws serve as purported predicates for that claim. Instead, Plaintiff broadly alleges that the "actions as alleged in this Complaint constitute 'unlawful' conduct[.]" (Dkt. 1, ¶ 91.) Thus, it appears Plaintiff is attempting to predicate her UCL "unlawful" claim on her theory the Products' labeling violates FDA regulations incorporated by California's Sherman Food, Drug, and Cosmetic Law ("Sherman Law"), Cal. Health & Safety Code § 109875, et seq. (*See* Dkt. 1, ¶¶ 31-44.) Any such claim is impliedly preempted. *See Nexus Pharmaceuticals, Inc. v. Central Admixture Pharmacy Services, Inc.*, 48 F.4th 1040, 1050 (9th Cir. 2022); *Chong v. Kind LLC*, 585 F.Supp.3d 1215, 1219 (N.D. Cal. 2022).

The Federal Food, Drug, and Cosmetic Act ("FDCA") not only lacks a private right of action but expressly provides that all enforcement is to be by the U.S. government (e.g., FDA) and state agencies. 21 U.S.C. § 337(a). There is only a "narrow gap" through which a private party's state-law claim must fit to escape preemption by the FDCA: The plaintiff must be suing for conduct that *violates* the FDCA (or else his or her claim is expressly preempted), "but the plaintiff must not be suing *because* the conduct violates

- 13 -

1  the FDCA (such a claim would be impliedly preempted under *Buckman*)." *Perez v. Nidek*
2  *Co., Ltd.*, 711 F.3d 1109, 1120 (9th Cir. 2013) (quotation and citation omitted).

3       Here, Plaintiff's allegations of a purported regulatory violation fail to navigate this
4  narrow gap. Plaintiff's UCL "unlawful" claim is implied preempted because "Plaintiff is
5  suing not only for conduct that [allegedly] violates the FDCA but 'because the conduct
6  violates the FDCA.'" *Borchenko v. L'Oreal USA, Inc.*, 389 F.Supp.3d 769, 774 (C.D.
7  Cal. 2019); *accord Chong,* 585 F.Supp.3d at 1219. While "certain state-law causes of
8  action that parallel federal [] requirements" may escape implied preemption, to make that
9  escape the state-law claims must "be relying on *traditional state tort* law which had
10 predated the federal enactments in question[.]" *Buckman Co. v. Plaintiffs' Legal*
11 *Committee*, 531 U.S. 341, 353 (2001) (emphasis added).

12      The Sherman Law incorporates the FDA's food labeling requirements. Cal. Health
13 & Safety Code § 110665 ("Any food is misbranded if its labeling does not conform with
14 the requirements for nutrition labeling as set forth in Section 403(q) (21 U.S.C. Sec.
15 343(q)) of the federal act and the regulations adopted pursuant thereto."). The Ninth
16 Circuit has held that a claim for alleged violation of this exact type of state statutory
17 adoption of FDA regulations is *not* a traditional state tort law theory and is implied
18 preempted. *Nexus*, 48 F.4th at 1048, 1050. The plaintiff in *Nexus* was suing under the
19 same statute as Plaintiff here: California's Unfair Competition Law. *See Nexus*
20 *Pharmaceuticals, Inc. v. Central Admixture Pharmacy Services, Inc.*, No. SACV 20-
21 01506-CJC, 2020 WL 6867069, at *1 (C.D. Cal. Nov. 18, 2020). The Ninth Circuit
22 explained the plaintiff's claims were impliedly preempted because they were "based on
23 state laws that incorporate federal law, rather than on traditional tort law." *Nexus*, 48 F.4th
24 at 1048. "The purported state law violation is of a law that says in substance 'comply
25 with the FDCA,' not a traditional common law tort." *Id.* at 1050. Therefore, "[t]he
26 prohibition of private enforcement applies squarely, as does 'implied preemption.'" *Id.*
27 at 1050-51.

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S COMPLAINT

1   Defendant recognizes that district courts previously split over whether UCL
2   "unlawful" claims are impliedly preempted where predicated on alleged violations of
3   FDA regulations incorporated by the Sherman Law. *See Effinger v. Ancient Organics*
4   *LLC*, No. 22-cv-03596-RS, 2023 WL 2214168, at *3 (N.D. Cal. Feb. 24, 2023)
5   (discussing split). *Nexus* makes clear that preemption applies. The Ninth Circuit has
6   "been protective of the FDA's statutory monopoly on enforcement authority." *Nexus*, 48
7   F.4th at 1048. Private causes of action predicated on violation of a state statute "that says
8   in substance 'comply with the FDCA'" are preempted because they "may indeed 'stand
9   as an obstacle' to FDA's enforcement discretion by enabling what the FDA regards as
10  over-enforcement." *Id.* at 1048, 1050. The Court must dismiss the UCL "unlawful" claim
11  to the extent based on any alleged violation of Sherman Law provisions incorporating
12  FDA regulations.

13  **E.      Plaintiff Lacks Standing to Pursue Injunctive Relief.**

14  To have standing to seek injunctive relief, a plaintiff must show she is likely to suffer
15  future injury from the defendant's conduct. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105
16  (1983). Plaintiff bears the burden to establish standing for an injunctive relief claim. *See*
17  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 and n.3 (2006); *Jackson v. General*
18  *Mills, Inc.*, No. 18cv2634-LAB (BGS), 2020 WL 5106652, at *5 (S.D. Cal. Aug. 28, 2020).

19  While a "customer who is deceived by false advertising *may* have standing to seek
20  injunctive relief forbidding the defendant from engaging in the same false advertising
21  again[,]" the "consumer must still establish the threat of actual and imminent injury."
22  *Jackson*, 2020 WL 5106652, at *5 (discussing *Davidson v. Kimberly-Clark Corp.*, 889 F.3d
23  956 (9th Cir. 2018)) (emphasis in original). The "threatened injury must be certainly
24  impending to constitute injury in fact, and . . . allegations of possible future injury are not
25  sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citations omitted).
26  The plaintiff also must show that the threatened injury is "fairly traceable to challenged
27  action of the defendant; and it must be likely that a favorable judicial decision will prevent
28  or redress the injury." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

1    Plaintiff does not allege facts plausibly establishing standing to pursue injunctive
2  relief. First, Plaintiff does not seek a mandatory injunction requiring Ferrara to make a
3  product with an (allegedly) *different* ingredient (i.e., natural malic acid), nor could she. *See,*
4  *e.g., Brown v. Natures Path Foods, Inc.*, No. 21-cv-05132-HSG, 2022 WL 717816, at *6
5  (N.D. Cal. Mar. 10, 2022) ("Obviously, the Court will not issue a mandatory injunction
6  forcing Nature's Path to create new products with more protein."); *Dailey v. A&W*
7  *Concentrate Company*, 519 F. Supp. 3d 668, 671 n.3 (N.D. Cal. Feb. 16, 2021) ("Dailey's
8  allegation that he would purchase the products again if they 'were reformulated such that
9  the vanilla flavor came exclusively from the vanilla plant' is not sufficient to allege
10  standing for injunctive relief."). Instead, the injunctive relief Plaintiff seeks is an order
11  prohibiting "publication of misleading and deceptive nutritional labels[.]" (Dkt. 1, ¶ 113.)

12    But even assuming the Product contained artificial malic acid used as flavoring, and
13  even assuming this Court were to issue an order prohibiting Ferrara from including the
14  "Naturally Flavored" statement on the Product's labels, it would not address any purported
15  threat of future injury alleged by Plaintiff. Regardless of whether malic acid is artificial or
16  natural, the FDA authorizes manufacturers to describe the ingredient as "malic acid" in the
17  ingredient list (and any contrary claim would be preempted). *See Willard*, 577 F. Supp. 3d
18  at 830; *Gross v. Vilore Foods Company, Inc.*, No. 20cv0894 DMS, 2020 WL 6319131, at
19  *3 (S.D. Cal. Oct. 28, 2020); *Sims v. Campbell Soup Co.,* No. EDCV 18-668 PSG, 2018
20  WL 7568640, at *7-8 (C.D. Cal. Sept. 24, 2018). Thus, even if the statement "Naturally
21  Flavored" was removed from the label, it would not inform Plaintiff whether the malic acid
22  is natural or artificial.

23    Therefore, Plaintiff's request for injunctive relief seeks to address nothing more than
24  an alleged "informational injury" of a type the Ninth Circuit has held does not confer
25  Article III standing. *In re Coca-Cola Prods. Mktg. & Sales Pracs. Litig. (No. II)*, No. 20-
26  15742, 2021 WL 3878654, at *2 (9th Cir. Aug. 31, 2021). The allegation that Plaintiff
27  wants to purchase the *same* (non-reformulated) products again if the labels were just
28  corrected by removing "Naturally Flavored" does not suffice.

In *Coca-Cola*, the plaintiffs alleged the label statement "*no artificial flavors. no preservatives added. since 1886*" was misleading because the product (Coca-Cola) included phosphoric acid, a chemical preservative or artificial flavor. *Id.* at *1. The Ninth Circuit addressed whether three different groups of plaintiffs had standing to seek injunctive relief. *Id.* at *1–2. The group of interest here consisted of two plaintiffs who "explained that they were not concerned with phosphoric acid, but rather with whether Coca-Cola was telling the truth on its product's labels." *Id.* at *2. Those plaintiffs stated that "they would be interested in purchasing Coca-Cola again if its labels were accurate, regardless of whether it contained chemical preservatives or artificial flavors." *Id.* The court explained that a plaintiff "cannot satisfy the demands of Article III by alleging a bare procedural violation." *Id.* (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 342 (2016)). It continued that "[a]n asserted information injury that causes no adverse effects cannot satisfy Article III." *Id.* (quoting *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2214 (2021)). The court therefore concluded these plaintiffs did not have standing to seek injunctive relief. *Id.* at *2.

The same applies here. Plaintiff's standing theory for the prohibitory injunction sought in the Complaint can only be that she wants to keep purchasing the Product (as presently formulated with allegedly artificial malic acid) so long as Defendant does not state "Naturally Flavored" on the labels. This is no different from the *Coca-Cola* plaintiffs who alleged they would keep purchasing Coca-Cola that contained phosphoric acid so long as the label did not state "no artificial flavors" and "no preservatives." *Coca-Cola*, 2021 WL 3878654, at *2. Thus, Plaintiff is merely seeking to enjoin an "asserted informational injury that causes no adverse effects" to her. *Id.* (quotation and citation omitted).

/ / /

/ / /

/ / /

- 17 -

## V.   CONCLUSION

The Court should grant the Motion to Dismiss in its entirety.

Dated:  August 18, 2023           **AMIN TALATI WASSERMAN, LLP**


                                  **/s/ *William P. Cole*** _____
                                  William P. Cole

                                  *Attorneys for Defendant Ferrara Candy*
                                  *Company Holdings, Inc.*


The undersigned, counsel for record for Ferrara Cany Company Holdings, Inc. certifies that this brief contains 5,491 words, which complies with the word limit of L.R. 11-6.1 and this Court's standing order.


Dated: August 18, 2023                  **/s/ *William P. Cole*** _____
                                        William P. Cole

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S COMPLAINT

## CERTIFICATE OF SERVICE
(United States District Court)

I hereby certify that on the 18th day of August, 2023, I caused the electronic filing of the foregoing document, through the CM/ECF system. The aforementioned document will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.


/s/*William P. Cole*
William P. Cole